**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **RICARDO MEDINA MEDINA**<br><br>Plaintiff,<br><br>v.<br><br>**HCL AMERICA, INC.**<br><br>Defendant. | **CASE NO. 3:17-CV-01017-CCC**<br><br><br>**WRONGFUL TERMINATION; BREACH OF CONTRACT; WAGES; DEFAMATION** |

**MOTION FOR PARTIAL JUDGEMENT ON THE PLEADINGS**
**AND CHANGE OF VENUE**

**TO THE HONORABLE COURT:**

COMES NOW Defendant HCL America, Inc. ("HCL America"), by and through its counsel of record, and respectfully moves this Court for partial judgment on the pleadings, under Rule 12(c) of the Federal Rules of Civil Procedure, and change of venue under 28 U.S.C. § 1404(a).

## I.      INTRODUCTION

This is a wrongful termination, wages, breach of contract, and torts lawsuit.  In general, former Axon Puerto Rico, Inc. employee Ricardo Medina Medina ("Plaintiff" or "Medina") alleges that he was not paid his salary, was suspended and subsequently discharged, and was the victim of a defamatory statement.  (*See generally* Docket No. 1-2, Complaint).  Plaintiff commenced this action in Puerto Rico state court in August 2015 ("State Court Action"), asserting the following five claims: (1) wrongful termination under Law No. 80 of May 30, 1976, as amended ("Law No. 80"); (2) breach of employment contract; (3) unpaid wages under Law No. 180 of July 27, 1998, as amended ("Law No. 180"); (4) unused vacation leave payout under Law No. 180; and (5) defamation under Article 1802 of the Puerto Rico Civil Code.  (Compl. at

1

¶¶ 36-53).

The purpose of this Motion is two-fold. First, to seek dismissal of Plaintiff's wrongful termination claim against HCL America. As discussed below, the pleadings reflect that HCL America was not Plaintiff's employer and was not involved, in any way, with Plaintiff's termination. Second, upon dismissal of the wrongful termination claim under Law No. 80, the remaining claims will be Plaintiff's unpaid wages, unused vacation leave payout, breach of employment contract and defamation claims. These claims, however, arose out of events that allegedly occurred in California and, as a result, key material witnesses are in California. Therefore, the convenience of the witnesses and parties and the interest of justice dictate that venue be transferred to the Central District of California, Western Division, Los Angeles (the "Central District of California").

Accordingly, HCL America respectfully requests that this Court grant this Motion by dismissing Plaintiff's wrongful termination claim and transferring this case to the Central District of California.

## II.      DISCUSSION

### A.      Factual Allegations and Procedural History

Plaintiff's Complaint is vague and ambiguous. Medina begins by identifying three separate and distinct corporate entities: HCL America, and former co-defendants in the State Court Action, Pratt and Whitney, Inc. ("Pratt and Whitney") and Axon Puerto Rico, Inc. ("Axon"). (Compl. at ¶¶ 2-4). Plaintiff then bundles these entities together by collectively referring to them as "the complainee" (*i.e.*, the defendant). (*Id.* at ¶ 5). Medina alleges he began working for "the complainee" in January 2013 as a Senior Consultant, (*Id.* at ¶ 9), but he fails to specifically allege that HCL America had any involvement with his recruitment and hiring.

In October 2013, "the complainee" allegedly assigned Plaintiff to work on a project for a client in California (*id.* at ¶ 10), though, again, Medina does not specifically allege that HCL America made this assignment. Plaintiff's purported success with the project grabbed the attention of HCL America, which allegedly invited Plaintiff to its California offices in May 2014 to offer him a "promotion," in Plaintiff's words (*Id.* at ¶¶ 10-12, 15, and 19). Plaintiff allegedly accepted the terms and conditions of the offer at once. (*Id.* at ¶14). This new job with HCL America apparently required Plaintiff to move to California permanently, which Plaintiff did in June 2014. (*Id.* at ¶¶ 13, 18).

Plaintiff claims, however, that the "promotion" did not come to fruition because HCL America never finalized his new salary and benefits. (*Id.* at ¶¶ 20). Consequently, according to Plaintiff's own account of events, he worked for HCL America in California for six months without ever receiving his agreed-to salary and benefits. Medina returned to Puerto Rico on January 28, 2015, on the instructions of the General Manager of Axon, Medina's employer. (*Id.* at ¶¶ 25-26). That same day, Axon suspended Plaintiff for two weeks, and on February 16, 2015, Axon terminated Plaintiff's employment. (*Id.* at ¶¶ 28, 32). Plaintiff does not allege that HCL America had any bearing on his termination from Axon.

In August 2015, Plaintiff commenced this action by filing his Complaint in Puerto Rico state court. After a somewhat protracted litigation in state court, HCL America removed the case to this Court in January 2017.

**B.    The Court Should Enter Judgment on the Pleadings and Dismiss Plaintiff's Wrongful Discharge Claim.**

Judgment on the pleadings is appropriate as to Plaintiff's wrongful discharge claim under Law No. 80 because HCL was not Plaintiff's employer and had no bearing on Medina's termination from employment with Axon. The Complaint does not contain factual allegations

that sufficiently plead a claim against HCL America under Law No. 80.

### 1.     Legal Standard for Motions for Judgment on the Pleadings.

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for a motion for judgment on the pleadings is essentially the same as that for deciding a motion to dismiss under Rule 12(b)(6). *Aponte–Torres v. University of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006); *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). To survive a Rule 12(b)(6) motion, and consequently a Rule 12(c) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." *Id*. at 555. In so doing, the court accepts as true all well-pleaded facts; however, this tenet does not apply to legal conclusions and mere recitals of the elements of a cause of action supported only by conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citing *Twombly*, 550 U.S. at 555). If the well-pleaded facts do not permit the court to infer "more than the mere possibility of misconduct," the complaint must be dismissed. *Iqbal*, 556 U.S. at 678-79.

### 2.     HCL is Not Considered Medina's Employer under the Joint Employer Doctrine.

If a plaintiff alleges an employment claim against more than one entity, the complaint must include sufficient factual allegations to establish an employment relationship with each entity. *Polo Echevarria v. Centro Medico del Turabo Inc.*, 949 F.Supp.2d 332, 337 (D.P.R. 2013). When the factual allegations establish an employment relationship with two or more entities, a joint employer relationship may exist. *Rivera-Vega v. ConAgra, Inc.*, 70 F.3d 153, 163 (1st Cir. 1995) (quoting *Holyoke Visiting Nurses Ass'n v. NLRB*, 11 F.3d 302, 306 (1st Cir.

1993)).  To determine if a joint employment relationship actually exists, the court must examine the following factors: (1) supervision of the employees' day-to-day activities; (2) authority to hire, fire, or discipline employees; (3) authority to promulgate work rules, conditions of employment, and work assignment; (4) participation in the collective bargaining process; (5) ultimate power over changes in employee compensation, benefits and overtime; and (6) authority over the number of employees.  *Rivera-Vega*, 70 F.3d at 163; *see also Holyoke*, 11 F.3d at 306.

Because Plaintiff's Complaint is excessively vague and ambiguous, Medina ultimately fails to address most of the factors above.  That is, the Complaint fails to address who supervised Plaintiff's day-to-day activities, who promulgated his work rules and conditions of employment, who had authority over the number of employees and whether any of the entities involved participated in a collective bargaining process. However, as illustrated below, the factors that the Complaint does address weigh heavily in favor of finding that HCL America was not a joint employer.[1]

### a. Plaintiff Fails to Allege that HCL had Authority to Hire, Fire, or Discipline Him.

Plaintiff not only fails to allege that HCL America had the authority to hire, fire, or

---

[1] Axon, Medina's employer and former co-defendant in the State Court Action, and Medina entered into a settlement agreement in which Medina released Axon from liability in connection with the claims he asserted in the State Court Action, including his wrongful discharge claim under Law No. 80.  *See* Docket No. 5, at pp. 1.  Axon was a joint venture company resulting from the sale in June 2008 of 49% of Axon's Common Stock by Pratt & Whitney, which then owned 100% of Axon, to HCL America. In June 2015, HCL America sold its 49% stake in Axon.  *Id.* Assuming for the sake of argument that Axon and HCL America were Medina's joint employers, *which we categorically deny*, then in releasing Axon from liability for the Law No. 80 wrongful discharge claim, pursuant to the settlement agreement, Medina also released his "joint employer," HCL America, from such a claim as a Law No. 80 wrongful discharge claim is not divisible under Puerto Rico law. *Id.*

Additionally, it is standard practice for a settlement agreement, such as the agreement that Medina and Axon entered into, to contain boilerplate language that releases from liability not just the defendant but also all current and former related companies of the defendant.  As a former affiliated company of Axon, HCL America has reason to believe that it is covered by the release language of the settlement agreement between Medina and Axon and, therefore, it has been released from liability for the Law No. 80 wrongful discharge claim and all other claims asserted by Medina against HCL America in his Complaint. *Id.*  Although the settlement agreement is a critical document to HCL America's defense, which may result in the dismissal of all claims in the instant action, so far Medina has rejected HCL America's requests for its disclosure.

discipline him, but also specifically alleges that **Axon** had authority to suspend and ultimately terminate him.  (Compl. at ¶¶ 28, 32).  Nor does Plaintiff allege that anyone at HCL America was involved, in any way, with the decisions to suspend and ultimately terminate him from his employment with **Axon**.  In other words, the Complaint fails to set forth **any** facts, let alone sufficient facts, to indicate that HCL America had any authority whatsoever to fire or discipline Plaintiff.  It would be purely speculative, and therefore inappropriate, for the Court to draw the inference that HCL had this authority.  *Twombly*, 550 U.S. at 555.  Moreover, there are no allegations anywhere in the Complaint that explicitly state which entity hired Plaintiff.  Medina merely alleges that he began working on January 8, 2013, for "the complainee."  (Compl. at ¶ 9).  However, common sense dictates that Axon hired him because, as the Complaint clearly states, Axon was the entity that terminated him.  (*Id.* at ¶¶ 28, 32).  Therefore, this factor weighs heavily against a finding that HCL America was Plaintiff's joint employer.

> **b.  Plaintiff Fails to Allege that HCL Exercised Any Other Authority or Control Over Him.**

Plaintiff fails to include any other facts that would indicate that HCL America exercised any control over him.  To the contrary, Plaintiff's allegations point to the conclusion that Axon exercised complete authority over him.  That is, Plaintiff alleges Axon's General Manager told him that it was okay for him to move to California. (Compl. at ¶ 17).  Moreover, according to Plaintiff, in a meeting that took place in Puerto Rico, Axon's General Manager instructed Medina to return to Puerto Rico on or before January 31, 2015.  (*Id.* at ¶ 25).  Medina returned to Puerto Rico as instructed by Axon's General Manager.  (*Id.* at ¶27).  And, as discussed above, Axon suspended Medina and ultimately terminated him.  (*Id.* at ¶¶ 28, 32).  Viewing the circumstances as a whole, the Complaint places Medina under Axon's sole control—not HCL America's. The fact that Axon resulted from a joint venture between HCL America, a separate

entity with a distinct business and employment structure in California, and Pratt & Whitney does not make HCL America Medina's employer. *Carvallo v. UMass Healthcare Inc.,* 971 F.Supp.2d 139, 146 (D.Mass.2013) ("[L]iability is predicated only on an employee-employer relationship, not on defendant's involvement in a common enterprise" (citations omitted)).

Based on a close reading of the Complaint, it seems that to insinuate an alleged joint employment situation, Medina relies on ¶¶ **12-17** where he loosely claims that both Axon and HCL America worked together on having him promoted and transferred to California. Medina's reliance, however, is misplaced. Nowhere in the Complaint does Medina make any factual allegations linking HCL America's management, or anyone at HCL America with decision-making power in California to that of Axon in Puerto Rico as it relates to the decisions to "promote" and "transfer" him.

Medina's allegation in passing that Axon's General Manager Ricardo Merino is also an employee of HCL America (*Id*. at ¶ **26**), also misses the mark. Throughout his Complaint, Medina invariably designates Merino as the General Manager of Axon. Medina makes no allegations that Merino was part of HCL America's management, that as an employee of HCL America Merino had the decision-making authority to make employment decisions binding on HCL America or even hat Merino ever acted on behalf of HCL America. A bare assertion that Merino was "also an employee" of HCL America, without more, even if proven, is insufficient to claim that Merino acted on behalf of both HCL America and Axon as it relates to Medina, and much less to allege that HCL America was Medina's joint employer. To the contrary, what the Complaint does reflect is that Medina was under Axon's control.

### c. **Plaintiff Fails to Allege that HCL America had Ultimate Power Over Changes in his Compensation, Benefits, and Overtime.**

The only remuneration and benefits that Plaintiff alleges HCL America had control over

were the purported salary and unused vacation leave Plaintiff claims he should have been paid for his "new job" in California.  However, the compensation and benefits he allegedly was to receive from HCL America for his job in California are entirely unrelated to the salary Plaintiff was receiving from his employment with Axon.  (*Id.* at ¶ 41).  More importantly, the compensation and benefits HCL America allegedly owed him for his new job in California are also unrelated to Plaintiff's claim for wrongful termination by Axon in Puerto Rico.

Therefore, the complaint lacks the factual basis necessary to meet the plausibility standard set forth in *Iqbal* and *Twombly*.  To the extent Plaintiff attempts to ignore the deficiencies of his Complaint by requesting the Court to allow discovery on the wrongful discharge claim, the Court should deny this request because the discovery process is not intended to repair a complaint that is facially implausible, especially given the exorbitant discovery costs that would ensue.  *Twombly*, *supra* 550 U.S. at 556-58. Thus, this Honorable Court should enter judgment on the pleadings and dismiss Plaintiff's wrongful discharge claim under Law No. 80.

## C.   The Court Should Transfer Venue to the United Stated District Court for the Central District of California for Adjudication of the Remaining Claims.

Other than his wrongful discharge claim under Law No. 80, all of Medina's claims against HCL America arise out of events that allegedly occurred in California, not Puerto Rico. Therefore, transfer of venue to the Central District of California is proper under 28 U.S.C. 1404(a).

### 1.   Transfer of Venue Legal Standard.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See Coady v. Ashcraft*, 223 F.3d 1, 11 (1st Cir. 2000). A motion for change of venue under Section 1404(a) is proper even after removal from state court.

*See Hollis v. Florida State University*, 259 F.3d 1295, 1300 (11th Cir. 2001). The decision is committed to the court's discretion. *Coady supra* 223 F.3d at 11; *Cianbro Corp. v. Curran-Lavoie*, Inc., 814 F.2d 7, 11 (1st Cir.1987). In general, the court is to analyze multiple factors when determining whether to transfer venue, the most important of which is the convenience of the witnesses. 15 Wright, Miller & Cooper, Federal Practice and Procedure 2d § 3851 at 415 (1986); *see also, e.g.*, *Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 259 (S.D.N.Y.1974).

Convenience and justice are abstract principles that must receive concrete meaning on a case by case basis. CHARLES ALAN WRIGHT AND MARY KAY KANE, LAW OF FEDERAL COURTS 283 (7th ed. 2011); *Stewart Organization Inc. v. Ricoh Corp*. 487 U.S. 22, 39 (1988); *Caguas Lumber Yard v. Ace Hardware Corp.*, 827 F.Supp.2d 76, 80 (D.P.R.2011). Convenience of witnesses is often defined as a function of the witness residence's proximity to the courthouse. *see Cianbro Corp. supra*; *US v. City of Woonsocket*, 480 F.Supp.2d 437, (D.Mass.2007). In addition, the interest of justice includes consideration of ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of attendance of willing witnesses; and the congested state of the court's calendar. *Chicago, R.I. V, Igoe*, 220 F.2d 299, 303 (7th Cir 1955).

> **2.      Plaintiff's choice of forum has little if any weight in this case.**

According to Plaintiff, HCL America extended a verbal offer of employment during a visit to HCL America's offices in California in the summer of 2014, (Compl. at ¶12). Allegedly, Plaintiff accepted the "new job" offer right away and, thus, while in California (*Id.* at ¶¶12 and 14). Medina further alleges that HCL America did not fulfill its obligations arising under the employment contract formed in California and that an HCL America employee allegedly

defamed him, also in California. (*Id.* at ¶29). Generally, there is a strong presumption in favor of a plaintiff's choice of forum. However, when the operative facts lack a material relationship with the district, plaintiff's choice loses weight. 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d §3848 at 134-39 (2007). Here, all factual allegations of Medina's remaining claims against HCL America not only lack a material relationship with the District of Puerto Rico but took place in California. Consequently, Medina's choice of forum should have little if any bearing on this Honorable Court's adjudication of the change of venue petition.

       **3.**      **Change of Venue Serves the Convenience of Witnesses and Parties**

Additionally, most of the evidence consists of testimonial evidence and the material witnesses for these claims and allegations reside in California, including: Mr. Levett Washington, an HCL America employee who allegedly made the offer of employment to Medina; Remal Pateder, an HCL America recruiter that will testify Medina was never recruited by HCL America; Shafaquat Ameez, the HCL America employee responsible for the alleged defamation; and the employees of HCL America's client in California to whom the alleged defamation was purportedly published. Moreover, Plaintiff has notified HCL America, through his Rule 26 Report, that he intends to call Levett Washington and Shafaquat Ameez as witnesses, likely because their testimonies will be crucial in assessing the truth of Plaintiff's allegations. A trial in the Central District of California would serve the interests of these witnesses, who reside in California. And, the convenience of these witnesses would also serve the parties' interests in terms of keeping witness attendance costs down. Furthermore, under Rule of Federal Procedure 45(c) (A) and (B), any witnesses that live in California would only be amenable to compulsory process in California. Thus, both Medina and HCL America would benefit from the Central District of California's subpoena power.

4.        **The Interests of Justice Demand Transfer.**

At least three witnesses (but likely more if we take into account the employees of HCL America's client in California to whom the defamatory statement about Medina was made) will need to travel from California to Puerto Rico to testify.  Since HCL America will also call these witnesses, it will bear a significant portion of the economic burden.  In turn, if this case is transferred to the Central District of California, video conferences may be coordinated with the Central District of California for all pre-trial conferences and depositions may also be taken through video conferences, with the witness remaining in California.  Plaintiff would only have to go to California for the trial.  One airplane ticket and hotel stay are less onerous than four separate round trip tickets and hotel rooms.

Beyond the travel and lodging costs associated with multiple witnesses traveling from California to Puerto Rico, HCL America has to pay an even higher price.  Whereas Medina will be able to offer his live testimony, HCL America has to choose between the unparalleled benefit of live testimony and settlement.  Such a burden on its due process right is improper.  The interests of justice—something HCL America is also entitled to—demand transfer to the Central District of California.

Puerto Rico employment statutes do not apply outside of its territorial boundaries. *See Green Giant Co. v Tribunal Superior*, 104 D.P.R. 489 (1975). Moreover, given that choice of law principles dictate that California law, not Puerto Rico law, applies to all of Medina's claims against HCL America, other than the Law No. 80 wrongful discharge claim, the interests of justice would be better served to have a California court analyzing and applying that law.  *See New Ponce Shopping Center, S.E. v. Integrand Assur. Co.*, 86 F.3d 265, 267-68 (1st Cir. 1996) (holding that Puerto Rico choice of law rules require the court to ascertain the jurisdiction with

the most significant contacts to the disputed issues).

Thus, this Honorable Court would put its discretion to the service of the parties, witnesses, and the interests of justice by transferring venue.  In light of all relevant factors, it must be concluded that this action against HCL America should have been brought in the Central District of California and, as such, transfer to that venue is proper under 28 U.S.C. § 1404 (a).

### III.   <u>CONCLUSION</u>

WHEREFORE, HCL America respectfully requests that this Honorable Court (1) enter partial judgment on the pleadings, dismissing Plaintiff's wrongful termination claim under Law No. 80; (2) transfer the remainder of the case to the Central District of California; and 3) grant oral argument as to this motion.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this <u>23rd</u> day of June 2017.

### CERTIFICATE OF SERVICE

I hereby certify that on this <u>23rd</u> day of June 2017, a copy of the preceding Motion for Partial Judgement on the Pleadings and Change of Venue was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM /ECF System.

Respectfully submitted,
*/s/ Luis M. Pellot-Juliá*
Luis M. Pellot-Juliá
USDC-PR No. 303,403
Email: lmpellot@pellot-gonzalez.com